UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
) M.J. No. 18-2523-MBB
v. )
)
ANGEL JAVIER MORELL-ONEILL, )
)
        Defendant )

## AFFIDAVIT IN SUPPORT OF DETENTION

I, Special Agent Jill Hardie, being duly sworn, depose and state that:

1. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have been employed as a Special Agent with the Drug Enforcement Administration ("DEA") since September 2016. I currently am assigned to the New England Field Division's Task Force 1 located in the Boston Office. Prior to my employment as a Special Agent, I was employed as a DEA Diversion Investigator from May 2012 to August 2016. As a Diversion Investigator, I was assigned to the DEA Boston Tactical Diversion Squad, a task force created to disrupt and dismantle those suspected of diverting licit pharmaceuticals and/or chemicals. Prior to my employment with DEA, I was employed an Intelligence Analyst at the New York/New Jersey High Intensity Drug Trafficking Area (HIDTA) under Homeland Security Investigation's El Dorado Task Force for three years.

2. As a DEA Special Agent, I am authorized to investigate violations of the laws of the United States, including violations of federal narcotics laws in Title 21 of the United States Code. I have received training regarding narcotics investigations while attending the Basic

Agent Academy in Quantico, Virginia, and have attended additional specialized training courses in furtherance of my past and current assignments.

3. I have participated in all aspects of drug investigations, including physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, the effecting of arrests, and debriefings of defendants, informants and witnesses who had personal knowledge regarding major narcotics trafficking organizations. I have also reviewed recorded conversations and telephone, financial, and drug records. Through my training and experience, I have become familiar with the manner in which illegal drugs are imported, transported, stored, and distributed, and the methods of payment for such drugs. I have also become familiar with the manner in which narcotics organizations utilize various forms of violence and intimidation in furtherance of their narcotics trafficking activity, to protect their operations, members, narcotics, and narcotics proceeds.

4. Based on my training and experience, I am also aware that drug traffickers commonly use cellular telephones to communicate about and further their drug trafficking activities, but are aware of law enforcement's use of electronic surveillance, and thus frequently change cellular telephone numbers and cellular telephones, use multiple cellular telephones simultaneously, and use prepaid cellular telephones (where the subscriber of the phone is not required to provide personal identifying information) in an effort to thwart law enforcement's use of electronic surveillance. I am also aware that drug traffickers often speak in vague, guarded, or coded language when discussing their illegal business in an effort to prevent detection, and often use text messages in lieu of phone calls to avoid speaking over the telephone.

## PURPOSE OF AFFIDAVIT

5. I submit this affidavit in support of the government's motion to detail Angel Javier Morell-ONEILL a/k/a "CUÑAO" (hereinafter, "ONEILL").

6. I am familiar with the facts and circumstances of this investigation from my own personal participation and from oral and written reports made to me by agents of the DEA and other federal, state, and local law enforcement agencies. I have also reviewed information from a variety of additional sources, including a confidential source of information, and consensually recorded telephone calls. Because I submit this affidavit only to apprise the Court of certain facts pertaining to the government's motion for detention, I have not included each and every fact known to me and other law enforcement officers involved in this investigation.

## FACTS SUPPORTING DETENTION

7. On October 22, 2018, agents seized two kilograms of a substance that field tested positive for the presence of fentanyl from a vehicle operated by ONEILL. ONEILL was the only occupant of the vehicle. After receiving his <u>Miranda</u> rights, ONEILL stated that he was en route to deliver the two kilograms of fentanyl to a drug customer.

8. Thereafter, agents sought and obtained a search warrant for ONEILL's residence at 142 Pleasant Valley Street, Building 140, Apartment 201, Methuen, Massachusetts. (M.J. No. 18-2524-MBB). Agents executed the search warrant the same day. Agents seized the following from ONEILL's residence:

   a. a black duffle bag containing 21 brick-shaped objects that I believe, based on my training and experience as well as my familiarity with this investigation, are kilograms of fentanyl, from a closet in the rear bedroom of the apartment. My belief that the bricks are kilograms of fentanyl is

3

based on the appearance of the bricks, which are wrapped in black tape and heat-sealed plastic, their shape and weight, prior seizures of fentanyl during the course of this investigation, and post-<u>Miranda</u> statements made by ONEILL;

b. a smaller duffle bag containing 5 brick-shaped objects that I believe, based on my training and experience, as well as my familiarity with this investigation, are kilograms of fentanyl; a Ziplock bag of white powder that I believe is approximately 700 grams of fentanyl; and two egg-shaped packages that I believe together are approximately 600 grams of fentanyl, from the closet in the master bedroom. My belief that the bricks are kilograms of fentanyl is based on the appearance of the bricks, which are wrapped in black and brown tape and heat-sealed plastic, their shape and weight, prior seizures of fentanyl during the course of this investigation, and post-<u>Miranda</u> statements made by ONEILL. Similarly, my belief that the Ziplock bag of white powder and egg-shaped packages contain fentanyl is based on the appearance of the white powder in the Ziplock bag, prior seizures of fentanyl during the course of this investigation, and post-<u>Miranda</u> statements made by ONEILL;

c. a box containing drug distribution paraphernalia and three open brick-shaped packages containing a white powder, from the floor of the rear bedroom, just outside the closet. I believe, based the appearance, shape and weight of the open brick-shaped packages, as well as prior seizures of

4

fentanyl during this investigation, and post-<u>Miranda</u> statements made by ONEILL, that the open brick-shaped packages are kilograms of fentanyl;

    d. a loaded 9 mm Millennium G2 firearm with serial number TKT78876 and two magazines with rounds from the pocket of a jacket hanging in the closet of the master bedroom, where some of the drugs were found;

    e. a money counter from the closet in the master bedroom; and

    f. a gas mask from the closet in the master bedroom.

9. I am aware that ONEILL was deported from the United States to the Dominican Republic under the name Joel Cortorreal in January 2015.

## CONCLUSION

10. On October 22, 2018, ONEILL was in possession of at least 32 kilograms of suspected fentanyl, as well as a loaded firearm. I am aware that the street value of approximately 32 kilograms of fentanyl is approximately $28.8 million. ONEILL has previously been deported from the United States. Based on the information contained in this Affidavit, as well as that contained in my Affidavit submitted in support of Criminal Complaint, I respectfully submit that ONEILL poses a risk of flight and constitutes a danger to the community.

Signed under the pains and penalties of perjury this 23rd day of October, 2018.

JILL HARDIE
Special Agent
Drug Enforcement Administration